IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES S. STEPHENS

    Plaintiff,

v.

KAISER FOUNDATION HEALTH
PLAN OF THE MID-ATLANTIC
STATES, INC., *et al.*

    Defendant.

Civil Action No.: RDB-11-1603

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Pending before this Court are Plaintiff James S. Stephens' Motion to Remand (ECF No. 21), and a Motion to Stay (ECF No. 10) filed by Defendants DePuy Orthopaedics, Inc. and Johnson & Johnson, Inc. Stephens filed suit against Defendants Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), Mid-Atlantic Permanente Medical Group, P.C. ("Mid-Atlantic"), Johnson & Johnson, Inc. ("Johnson & Johnson"), DePuy Orthopaedics, Inc. ("DePuy"), and Chesapeake Surgical, Ltd. ("Chesapeake") in the Circuit Court of Baltimore City to recover damages for injuries he sustained after undergoing a total hip replacement. Essentially, Stephens argues that his injuries were the result of medical negligence on the part of Kaiser and Mid-Atlantic, and due to a defective product manufactured and distributed by DePuy, Johnson & Johnson, and Chesapeake. DePuy and Johnson & Johnson removed the case to this Court pursuant to 28 U.S.C. § 1332, despite the fact that complete diversity does not exist insofar as Stephens, Kaiser, Mid-Atlantic, and

1

Chesapeake are Maryland citizens. DePuy and Johnson & Johnson (the "Removing Defendants") argue that diversity jurisdiction nevertheless exists because Stephens' allegations against Kaiser and Mid-Atlantic were fraudulently misjoined in that the medical negligence and product liability claims do not arise from the same transaction or occurrence, and do not share common questions of law or fact. Moreover, the Removing Defendants assert that Stephens has no possibility of recovering against Defendant Chesapeake, and therefore, under the fraudulent joinder doctrine, Chesapeake's citizenship should be disregarded for the purposes of determining this Court's diversity jurisdiction. This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the Removing Defendants have not met their heavy burden of showing that Kaiser and Mid-Atlantic were fraudulently misjoined. As complete diversity does not exist, this Court lacks jurisdiction under 28 U.S.C. § 1332, and it need not determine whether Defendant Chesapeake was fraudulently joined. Accordingly, Plaintiff's Motion to Remand (ECF No. 21) is GRANTED, and Defendants' Motion to Stay (ECF No. 10) is DENIED as moot.

## BACKGROUND

On September 12, 2005, Plaintiff Stephens underwent a right total hip replacement surgery performed by Michael Jaworski, M.D., at Greater Baltimore Medical Center ("GBMC") in Baltimore, Maryland. Compl. ¶ 36, ECF No. 2. During this surgery, Stephens was implanted with the Pinnacle Cup System, an artificial hip prosthesis manufactured by Defendant DePuy.[1] *Id.* at ¶ 37. After approximately two and a half years, Stephens' hip

---

[1] Johnson & Johnson is the parent company of DePuy.

replacement was examined and it was determined that the device had failed. *Id.* at 39. On June 10, 2008, Stephens underwent a revision surgery where the failed hip replacement was replaced with another Pinnacle Cup System device. *Id.* at ¶¶ 40-43. Only two days after leaving GBMC, Stephens reported to the emergency room at Saint Agnes Hospital in Baltimore complaining of indigestion, hip pain, and chest pains. *Id.* at ¶¶ 44. An examination of the new hip replacement revealed that it had also failed. *Id.* at ¶¶ 45-48. Stephens thereafter suffered severe complications relating to the failed hip replacement, and alleges numerous injuries and permanent disability sustained as a result of being implanted with the Pinnacle Cup System. *Id.* at ¶¶ 49-58.

On March 22, 2010, Stephens filed a medical negligence action in the Circuit Court for Baltimore City against non-diverse Defendants Kaiser and Mid-Atlantic. *See* Original Compl., ECF No. 21-6. Although the original state court action was solely a medical negligence action, through discovery Stephens learned that Kaiser and Mid-Atlantic would likely argue that Stephens' injuries were not the result of medical negligence, but rather, were the result of a defective Pinnacle Cup System. Stephens subsequently added diverse Removing Defendants Johnson & Johnson, DePuy, and non-diverse Defendant Chesapeake in anticipation of Kaiser and Mid-Atlantic's potential utilization of the "empty chair" defense. *See* Pl.'s Mot. Remand 3, ECF No. 21. The instant complaint was filed on May 4, 2011 in the Circuit Court for Baltimore City.

In his Complaint, Stephens asserts two causes of action against the non-diverse Defendants Kaiser and Mid-Atlantic: medical negligence and informed consent. Compl. Counts I and II. Stephens alleges that Kaiser and Mid-Atlantic were negligent by and

through their agent or employee Dr. Jaworski for placing an undersized and too vertical component for the total hip replacement, and that he "failed to use additional or sufficient screws to fixate the cup properly." *Id.* at ¶¶ 62-63. Stephens asserts four product liability related causes of action against Johnson & Johnson, DePuy, and Chesapeake: negligence, strict liability, breach of express and implied warranty, and violation of the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-301.

On June 10, 2011, Removing Defendants Johnson & Johnson and DePuy removed the case to this Court. *See* Notice of Removal, ECF No. 1. Removing Defendants sought to consolidate this action with multidistrict litigation pending in the Northern District of Texas. *See In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, MDL No. 2244. On June 13, 2011, Removing Defendants provided notice to the Judicial Panel on Multidistrict Litigation that they believed this case should be transferred to MDL No. 2244. The MDL Panel conditionally transferred this case to MDL No. 2244, but Mr. Stephens moved to vacate the transfer. *See* Defs.' Opp'n 2, ECF No. 36. In light of the potential consolidation of this action with the ongoing multidistrict litigation, on June 14, 2011, Johnson & Johnson and DePuy moved to stay all proceedings in this matter pending a transfer to MDL No. 2244. *See* Mot. Stay, ECF No. 10. Subsequently, Stephens timely moved to remand this case back to state on June 22, 2011.

## STANDARD OF REVIEW

Except as otherwise provided by law, a defendant may remove a state civil action to a federal court where the action is one "of which the district courts of the United States has original jurisdiction." 28 U.S.C. § 1441(a) (2009). The burden of establishing federal

4

jurisdiction is placed upon the party seeking removal, and because of the "significant federalism concerns" implicated by divesting a state court of jurisdiction, removal jurisdiction is strictly construed. *Mulcahy v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir.1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941). On a motion to remand, a court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Phillip Morris, Inc.*, 950 F. Supp. 700, 701-02 (D.Md.1997) (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahy*, 29 F.3d at 151; *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004)

A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims. 28 U.S.C. § 1441(a)-(c) (2006). Federal courts have original jurisdiction over two kinds of civil actions—those which are founded on a claim or right arising under the Constitution, treaties or laws of the United States, and those where the matter in controversy exceeds $75,000 and is between citizens of different States. U.S. CONST. art. III, § 2; 28 U.S.C. §§ 1331, 1332(a) (2006). If a civil action is not based on a question of federal law, then a federal court may only exercise original jurisdiction based on diversity of citizenship. The purpose of the diversity requirement "is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants. The presence of parties from the same State on both sides of a case dispels this concern, eliminating a principal reason for conferring § 1332 jurisdiction over any of the claims in the action." *Exxon Mobil*

*Corp. v. Allapattah Servs.*, 545 U.S. 546, 553-54 (2005). As the Supreme Court has noted, "[i]ncomplete diversity destroys original jurisdiction with respect to all claims." *Id.* at 554.

Federal courts are obliged to carefully scrutinize challenges to jurisdictional authority, and must "do more than simply point jurisdictional traffic in the direction of state courts." *17th Street Associates, LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 592 (E.D. Va. 2005). The federal remand statute provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . ." 28 U.S.C. § 1447(d). In other words, "a district court should be cautious in denying defendants access to a federal forum because remand orders are generally unreviewable." *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 988 F. Supp. 913, 914-15 (D. Md. 1997); *see also In re Lowe*, 102 F.3d 731, 736 (4th Cir. 1996) ("[A] federal court loses jurisdiction over a case as soon as its order to remand the case is entered.").

In the context of diversity jurisdiction, there are two distinct legal doctrines, fraudulent joinder and fraudulent misjoinder, that allow courts to disregard the citizenship of non-diverse parties and retain jurisdiction. Fraudulent joinder applies when a defendant seeking removal argues that, either the complaint pled fraudulent facts, or, other defendants were joined where there is no possibility of success against those defendants.[2] Akin to the fraudulent joinder doctrine is the newer and more ambiguous doctrine of fraudulent misjoinder, first articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (abrogated on other grounds by *Cohen v. Office Depot*, 204

---

[2] As previously mentioned, because this Court concludes that Defendants DePuy and Johnson & Johnson were not fraudulently *mis*joined, diversity jurisdiction does not exist, and this Court need not further delve into the doctrine of fraudulent joinder.

F.3d 1069 (11th Cir. 2000)). Fraudulent misjoinder "is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Wyatt v. Charleston Area Medical Ctr., Inc.*, 651 F. Supp. 2d 492, 496 (S.D. W.Va. 2009) (citing *Ashworth v. Albers Medical Inc.*, 395 F. Supp. 2d 395 (S.D. W.Va. 2005)).

In summarizing the doctrine of fraudulent misjoinder, the Eleventh Circuit noted that: "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Tapscott*, 77 F.3d at 1360 (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). The Eleventh Circuit concluded its opinion with the cryptic statement that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.* As commentators have noted, "[t]he court's language injects a considerable degree of ambiguity into the holding by intimating that there is some threshold above simple misjoinder that needs to be passed to constitute the new form of fraudulent joinder that it was recognizing in the *Tapscott* decision." 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & JOAN E. STEINMAN, FEDERAL PRACTICE & PROCEDURE § 3723 (4th ed. 2009). By injecting an "egregiousness" element into the procedural misjoinder inquiry, Wright & Miller have noted that the Eleventh Circuit's approach would further complicate the already muddied waters: "The fraudulent-joinder doctrine and its allied jurisprudence adds a level of complexity—and additional

litigation—to a federal court's decision regarding removal, however. The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted." 14B WRIGHT & MILLER, *supra* at § 3723.

The United States Court of Appeals for the Fourth Circuit has not addressed whether, in finding fraudulent misjoinder, a district court must make a finding of misjoinder and a finding of egregiousness or a bad faith attempt to defeat diversity. However, the majority of district courts that have considered the issue have rejected the need to make an additional finding of egregiousness. *See, e.g., Hughes v. Sears, Roebuck and Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *5 (N.D. W.Va. Sept. 3, 2009); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 07-1487, 2007 WL 2572048, at *3 (D. Minn. Aug. 30, 2007); *Burns v. W.S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W.Va. 2004); *Grennell v. W.S. Life Ins. Co.*, 298 F. Supp. 2d 390, 397 (S.D. W.Va. 2004); *Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001).[3]

This Court finds persuasive the line of cases arising in the district courts of West Virginia holding that "egregiousness" is not material to the fraudulent misjoinder analysis. *See Burns*, 298 F. Supp. 2d at 403 ("In this district, the 'egregious' nature of the misjoinder is not relevant to the analysis"); *Hughes*, 2009 WL 2877424 at *5; *Grennell*, 298 F. Supp. 2d at 397. In so concluding, the *Burns* court noted that "[a]dding what would be in essence a state-of-mind element to the procedural misjoinder inquiry would overly complicate what should be a straightforward jurisdictional examination." 298 F. Supp. 2d at 403. Although

---

[3] Other courts have reached the opposite conclusion and have imposed an additional egregiousness component to the fraudulent misjoinder inquiry. *See In re: Baycol Prods. Litig.*, MDL No. 1431 (MJD), Case No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases).

the Fourth Circuit has not weighed in, this approach comports with the Court's direct and streamlined approach to jurisdictional disputes—as noted by Judge Wilkinson, "[j]urisdictional rules direct judicial traffic. They function to steer litigation to the proper forum *with a minimum of preliminary fuss.*" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (emphasis added).

Consequently, this Court will not impose an egregiousness requirement to the misjoinder analysis.[4] As a result, the inquiry becomes whether the Plaintiff has satisfied the requirements of Federal Rule of Civil Procedure 20(a) which governs permissive joinder of claims. Rule 20(a) states in pertinent part that:

> Persons . . . may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions of occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).[5] Rule 20(a) imposes two specific requisites to the joinder of parties:

> (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a).

7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1653 (3d ed. 2001). The Fourth Circuit has held that Rule 20(a) "should be construed in light of its purpose, which is to promote trial convenience and expedite the

---

[4] In light of the following findings regarding the propriety of the Plaintiff's joinder of Defendants under Federal Rule of Civil Procedure 20(a), the issue of egregiousness would not even come into play insofar as this Court concludes there was no misjoinder.

[5] Maryland's law governing permissive joinder is substantively identical to its federal counterpart and need not be considered independently. *See* Md. Rule 3-212.

final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (internal quotation marks and citation omitted).

## ANALYSIS

As a preliminary matter, Removing Defendants DePuy and Johnson & Johnson urge this Court to defer consideration of Plaintiff's motion to remand while a transfer to MDL NO. 2244 is pending. However, despite the fact that the Judicial Panel on Multidistrict Litigation issued a conditional transfer order in this case, this court "has the authority to . . . rule on the motion [to remand] before a transfer order has been issued." *Moore v. Wyeth-Ayerst Labs.*, 236 F. Supp. 2d 509, 511 (D. Md. 2002) (citing *Asbestos Prods. Liab. Litig.*, 170 F. Supp. 2d 1348, 1349 n.1 (Jud. Pan. Mult. Lit. 2001). Indeed, the Rules of the Judicial Panel on Multidistrict Litigation expressly provide that "[t]he pendency of a . . . conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R.P.J.P.M.L. 2.1(d). More to the point, if this Court does not have jurisdiction over this matter, then neither will the MDL court. Accordingly, this Court will consider Plaintiff's Motion to Remand before addressing the Removing Defendants' Motion to Stay.

Stephens argues that because the medical malpractice Defendants Kaiser and Mid-Atlantic are Maryland citizens, complete diversity does not exist and this case should therefore be remanded to the Circuit Court for Baltimore City. The Removing Defendants, DePuy and Johnson & Johnson, argue that the medical malpractice defendants were fraudulently misjoined and that the claims against those non-diverse Defendants should be

severed and remanded, but the claims asserted against Removing Defendants should remain in federal court. Specifically, Removing Defendants argue that removal was proper inasmuch as the claims against the medical malpractice Defendants are distinct and unrelated to the product liability claims asserted against Removing Defendants.

## *Rule 20 Joinder*

As previously mentioned, Federal Rule of Civil Procedure 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must arise out of the same transaction or occurrence; and (2) some question of law of fact must be common to all parties. Fed. R. Civ. P. 20(a). Therefore, this Court will consider each requirement in determining whether the parties were properly joined. For the following reasons, this Court concludes that both requirements are satisfied, and therefore, the proper course of action is not to sever the non-diverse defendants, but to remand the case to the originating court.

### I. *Same Transaction / Occurrence*

Mr. Stephens suffered injuries as a result of multiple surgeries associated with the implantation of a prosthetic hip replacement. He claims that Kaiser and Mid-Atlantic committed medical malpractice during and in relation to the actual surgery, and claims that the prosthesis, the Pinnacle Cup System designed and manufactured by DePuy and Johnson & Johnson, was defective. Stephens essentially argues that the first prong of Rule 20(a) is met in that the transaction or occurrence at issue is the surgery itself. In other words, Stephens argues that his injuries were the result of medical malpractice on the part of Kaiser and Mid-Atlantic, and that these injuries are *also* due to the actions of DePuy and Johnson & Johnson in designing a faulty medical product. In short, Stephens argues that all of his

claims for relief arise out of the same transaction or occurrence: his surgery and the after-effects of that surgery.

On the other hand, Removing Defendants argue that because the evidence necessary to prove medical malpractice claims differs substantially from that needed to prove product liability claims, the two sets of claims do not arise from the same transaction or occurrence. At base, Removing Defendants argue that Mr. Stephens' medical malpractice and products liability claims are legally and factually distinct, and are therefore fraudulently misjoined.

There is no clear rule or generalized test in considering whether a set of facts constitute a single transaction or occurrence, and courts have generally adopted a case-by-case approach. *See* 7 WRIGHT &MILLER, *supra* at § 1653. What is evident, however, is that courts generally construe the phrase "same transaction or occurrence" liberally insofar as claims arise from the same transaction or occurrence if they have a logical relationship to one another. *See id.*; *see also Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) ("The transaction or occurrence test would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.") (internal quotation marks omitted); *Ashworth v. Albers Medical, Inc.*, 395 F. Supp. 2d. 395, 411 (S.D. W.Va. 2005). Moreover, Wright & Miller suggest that the same transaction or occurrence test is "reminiscent" of the logical-relationship test under Rule 13(a) in which "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." 7 WRIGHT & MILLER *supra* at § 1653. Specifically,

> The logical-relationship test employed under Rule 13(a) seems consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims arise out of "the same series of transactions or occurrences." Moreover, the flexibility of this standard enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20.

*Id.*

With that in mind, it cannot be said, that under the facts of this case, Mr. Stephens' medical malpractice claims have no logical relationship, or are not reasonably related to his product liability claims. Mr. Stephens had a Pinnacle Cup System hip prosthesis implanted into his body during a surgery. He had subsequent surgeries to replace his initial prosthesis and to correct his hip replacement. Thereafter, Mr. Stephens suffered injuries allegedly as a result of medical negligence, product malfunction, or a combination of the two. The medical malpractice and product liability claims are completely intertwined.

Removing Defendants place a great deal of emphasis on the case of *Hughes v. Sears, Roebuck and Company*, No. 2:09-CV-93, 2009 WL 2877424, at *5 (N.D. W.Va. Sept. 3, 2009). In that case, the plaintiff fell from an allegedly malfunctioning treadmill purchased from Sears. *Id.* at *1. The plaintiff went to the hospital where she claimed the physician misdiagnosed her injuries. *Id.* She brought a single action asserting product liability claims against Sears and the treadmill's manufacturer, and medical malpractice claims against the physician. *Id.* The District Court for the Northern District of West Virginia concluded that the product liability action must be severed from the medical malpractice action because the physician had "no control over the allegedly defective product . . . . Thus, . . . there [was] no

such bridge to provide a persuasive argument that the medical malpractice and products liability claims ar[ose] out of the same transaction or occurrence." *Id.* at *6.

*Hughes* is easily distinguishable from the present case. The injuries sustained by the plaintiff in *Hughes* on a piece of gym equipment had nothing to do with the physician's alleged misdiagnosis of those injuries—and it is clear that the two separate events did not arise from the same transaction or occurrence.

More apt are cases that consider the joinder of malpractice claims and products liability claims in the context of a defective medical device implanted in a patient. In that vein, Removing Defendants rely on *In re Guidant Corporation Implantable Defibrillators Producst Liability Litigation*, No. 07-1487, 2007 WL 2572048 (D. Minn. Aug. 30, 2007). That case involved complications surrounding the implant and explant of a cardiac defibrillator. Although the plaintiff's complaints generally arose from a series of surgeries relating to an allegedly defective product, the United States District Court for the District of Minnesota concluded that the medical malpractice action must be severed from the products liability action as a result of the different evidence that would be required at trial:

> Brown's claim against Dr. Housman is medical negligence, which would require evidence on Brown's care, treatment, and services provided by Dr. Housman. Brown's claims against either Guidant of EVT are general negligence or product liability claims . . . [which] would require evidence on the development, manufacture, and testing of Brown's [defibrillator] along with evidence of Guidant and EVT's knowledge, warnings, and representations regarding defective [defibrillators].

*Id.* at *7-8.

This Court finds more persuasive *Wyatt v. Charleston Area Medical Center Incorporated*, 651 F. Supp. 2d 492 (S.D. W.Va. 2009). Factually, *Wyatt* is nearly identical to *Guidant* in that

the case dealt with the implant and explant of a cardiac defibrillator, but the United States District Court for the Southern District of West Virginia reached the opposite conclusion with regard to the same transaction or occurrence prong of the Rule 20 analysis. The *Wyatt* court concluded that "[a]ll of these claims for relief arise out of the same occurrence: Ms. Wyatt's surgery and the after effects of that surgery." *Id.* at 498. More specifically, the *Wyatt* court concluded that, unlike in cases such as *Hughes* where the medical malpractice claims were logically separate from the products liability claims, "the medical injuries are intertwined with the claims against [the product manufacturer], not separate and distinct." *Id.*

Here, it is clear that all of Mr. Stephens' claims arise out of the same transaction or occurrence. Indeed, the very genesis of this case is the surgery and implantation of an allegedly faulty medical device in Mr. Stephens' body. The fact that Mr. Stephens might have to offer different evidence to establish his medical negligence and product liability claims cannot alter this analysis. The first prong of Rule 20(a) dictates that in order to properly join parties, the claims must arise out of the same transaction or occurrence. That element is met here. The issue of the different proof needed to establish the separate claims will be addressed in the next section.

### II. Common Question of Law or Fact

The second prong of the Rule 20(a) analysis needed to sustain permissive joinder of parties is that a question of law or fact common to all parties must arise in the action. "Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common

question of law *or* fact." 7 WRIGHT &MILLER, *supra* at § 1653 (collecting cases). Moreover, "the transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts . . . and therefore are to be read as broadly as possible whenever doing do is likely to promote judicial economy." *Id.* As is clear from the plain language of the rule, and as noted by commentators and courts alike, the rule requires only a single common question of law or fact—as is equally clear, the rule does not concern itself with whether certain questions of law and fact will arise which will *not* be common to all party defendants.

It is abundantly clear that numerous questions of law or fact common to all defendants will arise in this action. In his Motion to Remand, Mr. Stephens identifies a number of common questions, and this Court need not repeat those here. As noted by Mr. Stephens, it is possible—indeed probable that should this Court sever the causes of action against the medical malpractice Defendants and the Removing Defendants, each could utilize the "empty chair" defense. The analysis of the *Wyatt* court on this point is particularly apt:

> I find that there will be at least one common question of law or fact between the claims against the Medical Defendants and the claims against [the Product Defendant]. Notably, the plaintiffs are seeking to recover for the same damages from all defendants. Assuming that the plaintiffs['] allegations are true, the defendants will almost certainly debate which defendant is most responsible for the injuries. The injuries themselves, the extent of the injuries, and what caused those injuries are common questions of fact that must be resolved as to both the Medical Defendants and [the Product Defendant]. There are surely other common questions of law and fact as well.

*Wyatt*, 651 F. Supp. 2d at 498.

Therefore, after applying the two prongs of Rule 20(a), this Court concludes that the claims against the medical malpractice Defendants arise out of the same transaction or occurrence as product liability claims against the Removing Defendants, and the claims involve common at least one common question of law or fact. Accordingly, because the claims against the medical malpractice defendants are so interrelated, this Court cannot find fraudulent misjoinder, and will remand the case to the state court as jurisdiction is lacking as a result of incomplete diversity.

## CONCLUSION

Because Plaintiff's claims against the non-diverse defendants were not fraudulently misjoined with those against Removing Defendants, complete diversity does not exist as Kaiser and Mid-Atlantic are citizens of Maryland. Accordingly, this Court does not have jurisdiction over the case and Plaintiff's Motion to Remand (ECF No. 21) is GRANTED insofar as this case is REMANDED to the Circuit Court of Baltimore City, Maryland.[6] Finally, because this Court concludes that it lacks jurisdiction over this matter, Removing Defendants' Motion to Stay (ECF No. 10) is DENIED as MOOT.

A separate Order follows.

Dated: August 18, 2011

/s/ Richard D. Bennett
Richard D. Bennett
United States District Judge

---

[6] Plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1447(c) is DENIED. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). As the law surrounding fraudulent misjoinder is somewhat unsettled, this Court finds that Removing Defendants had an objectively reasonable argument for removal.